UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VICTOR M. RIVERA, | : | |
|     Plaintiff, | : | CASE NO. 3:18-cv-969 (MPS) |
| | : | |
| v. | : | |
| | : | |
| CORRECTION OFFICER HACKETT, et al. | : | |
|     Defendants. | : | July 18, 2018 |

**INITIAL REVIEW ORDER**

On June 14, 2018, the plaintiff, Victor M. Rivera, an inmate currently confined at the Carl Robinson Correctional Institution in Enfield, Connecticut, brought a civil action *pro se* under 42 U.S.C. § 1983 against twelve employees of the Connecticut Department of Correction ("DOC") for violating his rights under the Eighth and Fourteenth Amendments to the United States Constitution while he was confined at the MacDougall-Walker Correctional Institution ("MWCI") in Suffield, Connecticut and Osborn Correctional Institution ("Osborn") in Somers, Connecticut. Compl. (ECF No. 1). The twelve defendants are Correction Officer Hackett, Captain Burgos, Captain Rivera, Captain Black, Lieutenant Jasmin, Correction Officer Williams, Lieutenant Michaud, Correction Officer Griffin, Correction Officer Coro, Lieutenant Charter, Captain John Doe, and Lieutenant Perez. The plaintiff seeks damages against the defendants in their individual capacities. On July 10, 2018, this Court granted the plaintiff's motion to proceed *in forma pauperis* (ECF No. 10). For the following reasons, the complaint is dismissed without prejudice.

I.      Standard of Review

Under 28 U.S.C. § 1915A, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

II.     Factual Allegations

At approximately 4:30 p.m. on October 19, 2017, the plaintiff was sweeping the floor in the dayroom at MWCI. Compl. ¶ 1. MWCI is a "level-4" facility, but the plaintiff had always been a "level-3" inmate and, therefore, should not have been confined at MWCI. *Id.* at ¶ 14. While working, he became involved in a verbal altercation with another inmate, Tyrone Blash. *Id.* at ¶ 2. After arguing with Blash, the plaintiff returned to his single cell. *Id.* at ¶ 3.

At 4:57 p.m., Blash exited his cell and approached the plaintiff's cell with another inmate named Bruce. Compl. ¶¶ 4-5. When he reached the plaintiff's cell, Blash continued arguing with the plaintiff while Bruce waited by the cell door looking for any correctional staff. *Id.* at ¶ 5. After a couple minutes of arguing, Blash stepped into the plaintiff's cell, pulled a shank from his pocket, and attacked the plaintiff while Bruce remained by the door as "the lookout." *Id.* at ¶ 6. Blash stabbed the plaintiff on the side of his head and slashed his neck. *Id.* at ¶ 7. When the plaintiff tried to block the attack, Blash cut him on his left arm and chin. *Id.* The plaintiff was ultimately able to grab Blash's arm, which was holding the shank, and "bull rush[]" Blash out of his cell. *Id.* at ¶ 8. The struggle continued in the dayroom where officers called a "code blue" and separated and restrained the two inmates. *Id.* at ¶¶ 9-10. The plaintiff lost a substantial amount of blood in his cell and in the dayroom. *Id.* at ¶ 9.

After the attack, the plaintiff was escorted to the medical unit and then sent to UCONN hospital, where he received three staples for his head laceration. Compl. ¶ 11. When he returned to MWCI, Correction Officer Hackett issued him a disciplinary report for fighting. *Id.* at ¶ 12. Hackett's description of the incident was not truthful. *Id.* The plaintiff was not given a hearing on the charge and was placed in a restrictive housing unit ("RHU") for ten days. *Id.* at ¶¶ 13, 17.

Following his confinement in the RHU, the plaintiff was transferred to Osborn and housed in a "5x9 cell" with another inmate. Compl. ¶ 15. There, he requested evaluation from the mental health unit, but a staff member told him that, if he sought treatment, his mental health score would be increased. *Id.* at ¶ 19. The plaintiff interpreted the statement as a threat. *Id.*

III. Analysis

The plaintiff claims that the defendants violated his Eighth Amendment protection against cruel and unusual punishment by failing to protect him from the assault by Blash, which resulted in serious injuries. *See* Compl. ¶¶ 18-19. He also claims that the failure of the defendants to grant him a hearing on the disciplinary report for fighting and subsequent placement in the RHU violated his Fourteenth Amendment right to procedural due process. *Id.* at ¶ 17. The plaintiff's claim regarding the lack of mental health treatment at Osborn is vague, but, construing the allegations liberally, it appears he is attempting to state a claim that Osborn officials denied him adequate mental health care, in violation of the Eighth Amendment. *See id.* at ¶ 19. As shown below, however, the case cannot proceed on any of these claims.

A. Eighth Amendment Failure to Protect

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of . . . inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotations omitted). However, not every injury suffered by one prisoner from another prisoner establishes constitutional liability on the part of the prison official. *Id.* at 834.

A prison official violates the prisoner's Eighth Amendment protection against cruel and unusual punishment only when the following two requirements are satisfied. First, the prisoner must prove that the deprivation was "objectively, sufficiently serious . . . ." *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). If the claim is based on the official's failure to prevent harm, the plaintiff must prove that he is

4

"incarcerated under conditions posing a substantial risk of serious harm." *Id.* To determine whether the prisoner faced an excessive risk of serious harm, courts "look at the facts and circumstances of which the official was aware at the time [s]he acted or failed to act." *Hartry v. County of Suffolk*, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010) (internal quotations and citation omitted). Secondly, the prisoner must prove that the prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 302-03). This requirement is based on the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Id.* (quoting *Wilson*, 501 U.S. at 297). The prison official must have disregarded an excessive risk to the prisoner's health or safety. *See id.* at 837. Whether an official had knowledge of a substantial risk of harm is a question of fact "subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id.* at 842.

In this case, the plaintiff alleges that Blash's attack caused him serious physical injury. However, there are no facts alleged showing that any of the defendants acted with deliberate indifference to his safety. According to the plaintiff, correctional staff sent him for medical treatment immediately after the attack, and the plaintiff does not allege facts indicating whether any of the defendants even knew about the verbal altercation with Blash or that a physical attack was imminent. In fact, the only defendant mentioned in the plaintiff's statement of facts is Hackett, whose involvement was limited to the disciplinary proceedings that followed the attack. His contention that the attack occurred "due to the inadequate monitoring by all of the defendants, the availability of weapons, and inadequate classification policies" is conclusory. Compl. ¶ 18. Absent any specific

5

facts showing that the defendants recklessly disregarded a substantial risk of harm to the plaintiff, the Eighth Amendment claim cannot proceed.

  B.  Fourteenth Amendment Due Process

The Fourteenth Amendment to the United States Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause protects both a right to "substantive" due process and a right to "procedural" due process.

The standard analysis for a claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*). In the prison context (involving someone whose liberty interests have already been severely restricted because of his or her confinement in a prison), a prisoner must show that he was subject to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Sandin*, the Supreme Court concluded that a prisoner who was subject to a disciplinary term of thirty days confinement in restrictive housing did not sustain a deprivation of a liberty interest that was subject to protection under the Due Process Clause. *Id.* at 486. Following *Sandin*, the Second Circuit has explained that courts must examine the actual punishment received, as well as the conditions and duration of the punishment. *See Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004).

As to the second step of the analysis, the procedural safeguards to which the prisoner is entitled before being deprived of a constitutionally significant liberty interest

are well-established. These requirements include: (1) written notice of the charges; (2) the opportunity to appear at a disciplinary hearing and a reasonable opportunity to present witnesses and evidence in support of the defense, subject to the correctional institution's legitimate safety and penological concerns; (3) a written statement by the hearing officer explaining his decision and the reasons for the action being taken; and (4) in some circumstances, the right to assistance in preparing a defense. *See Wolff v. McDonnell*, 418 U.S. 539, 564–69 (1974); *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004).

In this case, the plaintiff has alleged that the defendants deprived him of a hearing before sanctioning him for the disciplinary report issued after the incident with Blash. However, his allegation that he was placed in RHU for ten days does not, alone, establish that he was subject to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. The plaintiff does not allege that he was subject to any harsh or unlawful conditions in RHU or that he received any additional sanctions from the disciplinary finding. Moreover, like his Eighth Amendment claim, he does not specify which of the defendants were personally involved in the disposition of the disciplinary charge and the decision to place him in RHU. Therefore, the plaintiff's Fourteenth Amendment claim cannot proceed based on the facts alleged.

C. Denial of Mental Health Treatment

The plaintiff also attempts to state a claim that Osborn officials denied him adequate mental health care by "threat[ening]" to raise his mental health score if he continued to seek treatment. *See* Compl. ¶ 19. To state a claim for deliberate indifference to a serious medical need, the plaintiff must show both that his medical need was serious and that defendants acted with a sufficiently culpable state of mind. *See*

7

*Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 492 U.S. 97, 105 (1976)).  There are both objective and subjective components to the deliberate indifference standard.  *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).  Objectively, the alleged deprivation must be "sufficiently serious."  *Wilson*, 501 U.S. at 298.  The condition must be "one that may produce death, degeneration, or extreme pain."  *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted).  Subjectively, defendants must have been actually aware of a substantial risk that the plaintiff would suffer serious harm as a result of their actions or inactions.  *See Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006).  Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983; *see id.* at 280; nor does a difference of opinion regarding what constitutes an appropriate response and treatment.  *See Ventura v. Sinha*, 379 F. App'x 1, 2–3 (2d Cir. 2010); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

Although his allegations, construed liberally, suggest an Eighth Amendment claim for deliberate indifference to serious medical needs, the plaintiff has not named any Osborn officials as defendants to this action, and even if he did, such a claim would have been improperly joined.  Federal Rule of Civil Procedure 20 permits joinder of claims against multiple defendants only if two criteria are satisfied:  (1) the claims "aris[e] out of the same transaction, occurrence, or series of transactions and occurrences; and (2) "any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).  Any claim regarding the denial of mental health treatment at Osborn is wholly unrelated to the Eighth Amendment failure to protect claim and the Fourteenth

Amendment due process claim, both of which stem from the physical altercation with Blash at MWCI. Therefore, if the plaintiff wishes to pursue a claim against Osborn officials for deliberate indifference to serious medical needs, he must do so in a separate case.

D. <u>Exhaustion of Administrative Remedies</u>

Aside from his failure to state a plausible claim under the Eighth or Fourteenth Amendments, the plaintiff has not sufficiently alleged whether he properly exhausted his administrative remedies before filing this complaint. He alleges that his "efforts in exercising his rights to the grievance process were violated as . . . DOC failed to grant [his] grievance." Compl. ¶ 16. Attached to his complaint is the plaintiff's level-1 grievance, which was returned without disposition for failure to state sufficient information, including a request for a remedy. *See id.* at 14-15. The plaintiff has not alleged whether he attempted to resubmit his grievance or appeal the disposition. Although exhaustion is an affirmative defense under the Prison Litigation Reform Act ("PLRA"), and thus pleading exhaustion is not necessary to state a claim, I address the exhaustion issue to put the plaintiff on notice of other potential problems with the case that he may wish to address in an amended complaint.

The exhaustion provision of the PLRA provides in relevant part that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies are available are exhausted." 42 U.S.C. § 1997e(a). In enacting § 1997e, Congress sought to afford prison officials time and opportunity to address complaints internally and reduce the quantity, and improve the quality, of

prisoner suits. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). Exhaustion of administrative remedies is mandatory for any prisoner challenging the conditions of his confinement. *Id.* at 523; *Braham v. Perelmuter*, No. 3:15-cv-1094 (JCH), 2017 WL 3222532, *8 (D. Conn. Jul. 28, 2017).

In *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), the United States Supreme Court held that exhaustion under the PLRA requires "proper exhaustion," meaning full compliance with administrative procedures and deadlines. *See also Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006). "An 'untimely or otherwise procedurally defective administrative grievance' . . . does not constitute proper exhaustion." *Snyder v. Whittier*, 428 F. App'x 89, 91 (2d Cir. 2011) (quoting *Woodford*, 548 U.S. at 83-84). To properly exhaust a claim, a prisoner must comply with the prison grievance procedures, including utilizing each step of the administrative appeal process. *Id.* (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)); *Jones v. Johnson*, No. 3:15-cv-1135 (DJS), 2017 WL 1843692, *4 (D. Conn. May 8, 2017). The Connecticut DOC's administrative remedy process is set forth in Administrative Directive 9.6. *Shehan v. Erfe*, No. 3:15-cv-1315 (MPS), 2017 WL 53691, *6 (D. Conn. Jan. 4, 2017).

"An inmate may be excused from the exhaustion requirement only if administrative remedies were not in fact available." *Shehan*, 2017 WL 53691, *6 (citing *Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1858 (2016)). The Supreme Court has identified three circumstances in which an administrative remedy cannot be used to obtain relief: (1) "the administrative remedy may operate as a 'dead end,' such as where the office to which inmates are directed to submit all grievances disclaims the ability to consider them . . . [(2)] the procedures may be so confusing that no ordinary prisoner

could be expected to 'discern or navigate' the requirements . . . [a]nd [(3)] prison officials may 'thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Id.* (quoting *Ross*, 136 S. Ct. at 1859-60).

Here, it is not clear from the complaint whether the plaintiff fully complied with the exhaustion procedure before commencing this civil action. His level-1 grievance was returned without disposition, and there are no facts showing whether he made any further attempt to address his claims through the prison grievance system. Although he alleges that DOC officials "violated" his right to utilize the grievance system, this allegation is conclusory and devoid of any supporting facts.

## ORDERS

The complaint is hereby dismissed without prejudice for failure to state a claim. The clerk is directed to close this case. If the plaintiff wishes to continue pursuing this action, he may, within **thirty (30) days of the date of this order**, file a motion to reopen the case and attach an amended complaint that cures the factual deficiencies of the Eighth Amendment failure to protect claim and the Fourteenth Amendment due process claim as explained above. Any claim regarding the denial of mental health treatment at Osborn must be stated in a separate case. **Failure to file a motion to reopen and attach an amended complaint that complies with these instructions within thirty (30) days of the date of this order will result in the dismissal of this case with prejudice.**

It is so ordered.

Dated at Hartford, Connecticut this 18th day of July 2018.

                                                                /s/
                                                Michael P. Shea
                                                United States District Judge